UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ITyX SOLUTIONS, AG, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| KODAK ALARIS INC., | * |
| | * |
| Defendant; Counterclaim Plaintiff, | *  Civil Action No. 16-cv-10250-ADB |
| | * |
| v. | * |
| | * |
| ITYX SOLUTIONS AG; ITYX SYSTEMENTWICKLUNG OHG; ITYX TECHNOLOGY GMBH; SÜLEYMAN ARAYAN; and HEIKO GROFTSCHIK, | * |
| | * |
| Counterclaim Defendants. | * |

**<u>MEMORANDUM AND ORDER ON THE PARTIES' EQUITABLE CLAIMS</u>**

BURROUGHS, D.J.

Plaintiff ITyX Solutions AG ("ITyX Solutions") filed this lawsuit against Defendant Kodak Alaris, Inc. ("KAI") for breach of contract, declaratory judgment, and injunctive relief after their strategic partnership soured and a commercial dispute arose between them. [ECF No. 1] ("Complaint"). KAI, in turn, brought counterclaims for breach of contract, breach (and aiding and abetting the breach) of a fiduciary duty, tortious interference with contractual and business relations, and declaratory judgment against ITyX Solutions as well as the related parties ITyX Systementwicklung OHG ("ITyX OHG"), ITyX Technology GMBH ("ITyX Technology"), ITyX Solutions' CEO, Süleyman Arayan, and ITyX Solutions' co-founder, Heiko Groftschik. [ECF No. 122] ("Counterclaim Complaint"). On November 26, 2018, at the

conclusion of a ten-day jury trial, the jury returned a verdict in ITyX Solutions' favor on liability and awarded ITyX Solutions $7,466,045 in damages. [ECF No. 323].

The case now comes before the Court for a determination of the parties' equitable claims. For the reasons that follow, the Court finds that: (i) KAI did not properly terminate the Master Agreement or the PS Agreements on December 18, 2015; (ii) KAI invoked the Exit Provision contained in Section 3.2(iii) of the Master Agreement on December 18, 2015 but later materially breached the Master Agreement by reentering the IDR business represented by the Kodak IDR Product within two years of abandoning the business; (iii) the Master Agreement and PS Agreements are no longer binding on the parties; and (vi) ITyX Solutions' request for injunctive relief is <u>DENIED</u> as moot.

I.  **FINDINGS OF FACT**

The Court makes the following findings of fact based on the evidence introduced at trial, consistent with the jury verdict.[1]

ITyX Solutions is a German software company that created an intelligent document recognition ("IDR") software suite. IDR software products interpret documents, extract text-based content from them, and organize that content for the user. ITyX Solutions' software suite uses an ITyX Solutions-created platform to carry out IDR processes.

---

[1] See Perdoni Bros., Inc. v. Concrete Sys., Inc., 35 F.3d 1, 5 (1st Cir. 1994) ("[W]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his [or her] disposition of an accompanying equitable claim." (quoting Lincoln v. Bd. of Regents, 697 F.2d 928, 934 (11th Cir.))); MAZ Partners LP v. Shear, 265 F. Supp. 3d 109, 118 (D. Mass. 2017), aff'd sub nom. In re PHC, Inc. S'holder Litig., 894 F.3d 419 (1st Cir. 2018) ("Even when a plaintiff is entitled to a jury trial on his legal claims, the district court must nonetheless make an independent judgment as to any equitable issue. This proposition is true even though the jury's determination of factual issues common to both the legal and equitable claims would bind the court." (quoting Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc., 356 F.3d 731, 735 (7th Cir. 2004)).

In 2011, ITyX Solutions and Eastman Kodak Company ("EKC") began discussing a potential business relationship and, on January 18, 2012, entered into a contract titled the "Master Agreement," which is governed by New York substantive law. The day after executing the Master Agreement, EKC filed for bankruptcy. One and a half years later, in September 2013, KAI stepped into the shoes of EKC as the counterparty to the Master Agreement.[2]

Pursuant to the Master Agreement, the parties entered into an arrangement whereby ITyX Solutions licensed certain software to KAI, and KAI integrated that software into a Kodak-branded product. The Master Agreement refers to the Kodak-branded product, which was eventually marketed under the name "Info Insight," as the "Kodak Product" or the "Kodak IDR Product." Section 1.2 of the Master Agreement defines the "Kodak Product" as:

> the product, product family, and components of products, more particularly described as the Kodak IDR Product, that Kodak intends to distribute to [end users] and will include or incorporate the Licensed Software but only as described in Appendix A Exhibit 1 . . . (but not any Licensed Software described in [Appendix A Exhibit 2]) supplied by [ITyX Solutions] and as developed pursuant to this Agreement.

The technical and functional features of the "Licensed Software" are described in more detail in Appendix A to the Master Agreement.

Under Section 3.1 of the Master Agreement, KAI agreed to "solely distribute the Kodak Product" and to "not develop a product functionally equivalent to the Kodak Product" while the Master Agreement was in effect. The Master Agreement also contains exceptions to KAI's exclusivity obligations. In relevant part, under Section 3.2(iii) (the "Exit Provision"), KAI, "in its sole good faith business judgment," was permitted to "decide to abandon the IDR business represented by the Kodak Product." If the Exit Provision was triggered, for a period of two years

---

[2] Because KAI assumed the rights and obligations of EKC under the Master Agreement, the Court will refer to EKC as KAI when describing the terms of the Master Agreement.

after leaving the IDR business, KAI agreed not to sell a "new Kodak-IDR product" that was not supplied by ITyX Solutions.

In addition, Section 2.0 of the Master Agreement provides that it had an initial term of five years, which commenced on January 18, 2012, and would "automatically renew on its anniversary date for successive two-year periods . . . thereafter unless otherwise terminated as provided [in the Master Agreement]." Pursuant to Section 4.1 of the Master Agreement, either party was entitled to terminate the Master Agreement for cause "after a material breach by the other Party" by giving written notice to the defaulting Party that "specif[ied] the default in reasonable detail," unless "the defaulting Party cure[d] the default within 30 days after receipt of the [default notice] or, if such default [could not] be cured within such time, the defaulting Party [did] not promptly start diligently and continuously in good faith to cure the default."

Section 29.0 of the Master Agreement provides that ITyX Solutions "shall act as an independent contractor and nothing herein shall be construed to make [ITyX Solutions] or any of its employees, officers, directors or representatives, the agent employee or servant of Kodak." ITyX Solutions introduced evidence at trial demonstrating that, by entering into the Master Agreement, the parties did not intend or agree to form a partnership or joint venture.

Further, under Section 8.1 of the Master Agreement, the parties anticipated that ITyX Solutions would "provide additional services as stated in one or more Statements of Work," such as training or "other services in connection with further software development." Between March 20, 2012 and December 17, 2014, the parties entered into fourteen Statements of Work. On August 20, 2015, ITyX Solutions and KAI entered into the PS Transfer Pricing Agreement ("PS Agreement"), with an effective date of June 1, 2015. ITyX Solutions and KAI entered into the Amendment to the PS Agreement ("PS Amendment," collectively with the PS Agreement, the

"PS Agreements"), which was signed by KAI on September 11, 2015 and by ITyX Solutions on October 9, 2015. The PS Agreements further defined the relationship between the parties, establishing that KAI would focus solely on marketing and sales, and ITyX Solutions would provide the technology to deliver and support the product.

In June 2014, KAI's parent company, Kodak Alaris Holdings ("KAH") entered into an Investment Framework Agreement ("IFA") with ITyX OHG, ITyX Technology, and Mr. Arayan, the ITyX Solutions CEO, to acquire 25.1% of ITyX Technology. Neither ITyX Solutions nor KAI is a party to the IFA. The IFA provided that, in exchange for acquiring 25.1% of ITyX Technology, KAH would make a series of direct investments with ITyX Technology totaling €12.6 million over the course of 16 months. In the event that KAH defaulted on its payment obligations under the IFA for more than 30 days, ITyX OHG and ITyX Technology could exercise a "call option" and purchase all of KAH's shares of ITyX Technology in exchange for waiving all of KAH's outstanding obligations under the IFA for an additional €1.

In June 2015, by which time the relationship between KAI and ITyX Solutions was already deteriorating, KAH failed to timely make one of the monthly payments required under the IFA. On November 24, 2015, ITyX OHG gave written notice to KAH that it was exercising the call option due to the missed monthly payment, and KAH's rejection of ITyX Technology's request for an investment of an additional €2 million into ITyX Technology.[3] On December 18, 2015, KAH sent a letter to ITyX OHG and ITyX Technology, which terminated the IFA for cause and noticed KAH's withdrawal as a shareholder of ITyX Technology. KAH asserted that

---

[3] Section 4.2 of the IFA states that "[i]n support of acquisitions or similar strategic investments, [KAH] undertakes to invest in [ITyX Technology] up to an additional [€2 million] during the 2015 calendar year or later, within a period of 90 days upon request by [ITyX Technology]." IFA at 13. On May 28, 2015, ITyX Technology requested a €2 million investment that KAH did not complete.

by sending the November 2015 exercise notice, ITyX OHG "ha[d] severely and intentionally violated its fiduciary duties owed to [KAH] under the [IFA] and as a co-shareholder of [ITyX Technology];" that the call option, which triggered the purchase of KAH's shares of ITyX Technology worth at least €12.6 million for just €1, was immoral and void; and that the November 2015 exercise notice had permanently destroyed the relationship of trust between the parties.

On that same day, December 18, 2015, KAI notified ITyX Solutions by letter (the "December 18 KAI Notice") that the fiduciary duty breaches associated with the exercise of the call option "also constitute[d] a material breach" of the Master Agreement and the PS Agreements, which could not be cured and thereby voided the contracts. The December 18 KAI Notice does not contend that ITyX Solutions committed a material breach of the Master Agreement or the related follow-on agreements by breaching the implied covenant of good faith and fair dealing inherent in those agreements under New York law. In any event, at trial, KAI failed to demonstrate that ITyX Solutions acted in bad faith or otherwise breached the implied covenant during the course of the contractual relationship.

The December 18 KAI Notice also conveyed that even if there was no breach of the Master Agreement, KAI was exiting the IDR business as provided for in the Master Agreement's Exit Provision. At trial, however, ITyX Solutions introduced evidence demonstrating that KAI subsequently reentered the IDR business represented by the Kodak IDR Product by offering its AIM platform for sale beginning in at least September 2016.

6

## II. CONCLUSIONS OF LAW

### A. Declaratory Judgment

In Count I of the Complaint, ITyX Solutions seeks a declaratory judgment that KAI did not properly terminate the Master Agreement or the PS Agreements, and that those agreements are still binding on the parties. Complaint ¶¶ 115–20. Conversely, in Count VII of the Counterclaim Complaint, KAI seeks a declaratory judgment that KAI properly terminated the Master Agreement on December 18, 2015 or that, assuming there was no termination, the Exit Provision is the sole clause governing KAI's commercial activity with respect to the Kodak IDR Product. Counterclaim Complaint ¶¶ 121–25.

The Court finds that KAI did not properly terminate the Master Agreement or the PS Agreements on December 18, 2015. Given that ITyX Solutions and KAI did not engage in a partnership or joint venture, ITyX Solutions did not owe KAI a fiduciary duty. Accordingly, the "intentional breaches of duty" asserted in the December 18 KAI Notice were not proper grounds for terminating the contracts for cause.

The Court also finds that although KAI invoked the Exit Provision contained in Section 3.2(iii) of the Master Agreement on December 18, 2015, KAI materially breached that agreement by subsequently reentering the IDR business represented by the Kodak IDR Product within two years of abandoning the business by marketing its AIM platform. Where, as here, a party to a contract commits a material breach, "New York's doctrine of election of remedies provides that the non-breaching party must choose between two remedies—it can elect to terminate the contract and recover liquidated damages or it can continue the contract and recover damages solely for the breach." VFS Fin., Inc. v. Falcon Fifty LLC, 17 F. Supp. 3d 372, 380 (S.D.N.Y. 2014) (citation and quotation marks omitted). "[A] party can either treat the entire contract as

broken and sue immediately for the breach or reject the proposed breach and continue to treat the contract as valid," but the party "cannot at the same time treat the contract as broken and subsisting" because "[o]ne course of action excludes the other." ESPN, Inc. v. Office of Com'r of Baseball, 76 F. Supp. 2d 383, 388 (S.D.N.Y. 1999) (quoting Inter–Power of N.Y., Inc. v. Niagara Mohawk Power Corp., N.Y.S.2d 911, 913 (N.Y. App. Div. 1999)) (quotation marks omitted). Here, following KAI's breach, ITyX Solutions elected not to continue performing under the Master Agreement and PS Agreements, and instead filed this action seeking, among other things, monetary damages under the Master Agreement and PS Agreements (including monetary damages for the complete duration of the PS Agreements). Accordingly, the Court finds that ITyX Solutions elected to terminate the Master Agreement and PS Agreements, and that the contracts are no longer binding on the parties.

### B. Injunctive Relief

In Count II of the Complaint, ITyX Solutions requests that the Court enter an order granting specific performance of Sections 3.1 and 3.2(iii) of the Master Agreement and enjoining KAI from engaging in various commercial activities until January 18, 2019. Complaint ¶¶ 121–28. The Court denies ITyX Solutions' request at moot.

### VII. CONCLUSION

For the foregoing reasons, Count II of the Complaint is DENIED as moot, and it is hereby DECLARED and ADJUDGED that:

1) KAI did not properly terminate the Master Agreement or the PS Agreements on December 18, 2015.

2) KAI invoked the Exit Provision contained in Section 3.2(iii) of the Master Agreement on December 18, 2015 but later materially breached the Master Agreement by reentering the IDR business represented by the Kodak IDR Product within two years of abandoning the business.

3) The Master Agreement and PS Agreements are no longer binding on the parties.

   **SO ORDERED.**

March 1, 2019                                                               /s/ Allison D. Burroughs
                                                                            ALLISON D. BURROUGHS
                                                                            U.S. DISTRICT JUDGE