UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ITYX SOLUTIONS AG, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| KODAK ALARIS, INC., | * | |
| | * | |
| Defendant; Counterclaim Plaintiff, | * | Civil Action No. 16-cv-10250-ADB |
| | * | |
| v. | * | |
| | * | |
| ITYX SOLUTIONS AG; ITYX SYSTEMWICKLUNG OHG; ITYX TECHNOLOGY GMBH; SÜLEYMAN ARAYAN; and HEIKO GROFTSCHIK, | * | |
| | * | |
| Counterclaim Defendants. | * | |

## MEMORANDUM AND ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL AND/OR AMENDMENT TO EQUITABLE CLAIM ORDER AND MARCH 1 JUDGMENT

BURROUGHS, D.J.

Plaintiff ITyX Solutions AG ("ITyX Solutions") and Defendant Kodak Alaris, Inc. ("KAI") entered into a strategic partnership to develop and market "intelligent document recognition" software products. After the relationship soured and a commercial dispute arose between them, ITyX Solutions filed this lawsuit against Kodak for breach of contract, declaratory judgment, and injunctive relief. [ECF No. 1 ("Complaint")]. KAI in turn brought counterclaims for breach of contract, breach (and aiding and abetting the breach) of a fiduciary duty, tortious interference with contractual and business relations, and declaratory judgment against ITyX Solutions as well as the related parties ITyX Systemwicklung OHG ("ITyX OHG"), ITyX Technology GMBH ("ITyX Technology"), ITyX Solutions's CEO Süleyman

Arayan, and ITyX Solutions's co-founder Heiko Groftschik (collectively with ITyX Solutions, "ITyX"). [ECF No. 122 ("Counterclaims")]. From November 5 through November 26, 2018, the parties presented their cases to an eleven-member jury, which returned a verdict in favor of ITyX and awarded $7,466,045 to ITyX Solutions. [ECF No. 323]. On March 1, 2019, the Court issued findings on the parties' equitable claims and entered a final judgment in the amount of $9,211,699.20. [ECF Nos. 348, 350].

Now pending before the Court is KAI's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, a new trial or remittitur pursuant to Rule 59, or to amend the Court's March 1, 2019 equitable claim order pursuant to Rule 52. [ECF No. 366]. For the reasons explained herein, the motion is DENIED.

**I.      FACTS AND CONCLUSIONS OF LAW**

KAI argues that the Court should amend its March 1, 2019 findings pursuant to Rule 52(b), which provides, "On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." Fed. R. Civ. P. 52(b). "Rule 52(b) is intended to reduce the frequency of appellate remands by permitting the correction of errors in the district court[.]" 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2582 (3d ed. 2019). Rule 52(b) does not provide a party an opportunity to relitigate a point, but rather to "raise questions of substance by seeking reconsideration of material findings of fact or conclusions of law to prevent a manifest injustice or reflect newly discovered evidence." Id. The rule gives district courts "considerable discretion . . . subject to circumstances developed in the case law." Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527, 536 (1st Cir. 2011). KAI has not demonstrated any error in the Court's

March 1, 2019 findings of facts or conclusions of law. The Court therefore denies KAI's motion to amend the March 1 order pursuant to Rule 52(b). For ease of reference, the Court restates its findings of fact and conclusions of law here. See ITyX Sols., AG v. Kodak Alaris Inc., No. 16-cv-10250-ADB, 2019 WL 1005497 (D. Mass. Mar. 1, 2019).

ITyX is a German software company that created an intelligent document recognition ("IDR") software suite. IDR software products interpret documents, extract text-based content from them, and organize that content for the user. ITyX Solutions' software suite uses an ITyX Solutions-created platform to carry out IDR processes. In 2011, ITyX Solutions and Eastman Kodak Company ("EKC") began discussing a potential business relationship and, on January 18, 2012, entered into a contract titled the "Master Agreement," which is governed by New York law. The day after executing the Master Agreement, EKC filed for bankruptcy. One and a half years later, in September 2013, KAI stepped into the shoes of EKC as the counterparty to the Master Agreement.[1]

Pursuant to the Master Agreement, the parties entered into an arrangement whereby ITyX Solutions licensed certain software to KAI, and KAI integrated that software into a Kodak-branded product. The Master Agreement refers to the Kodak-branded product, which was eventually marketed under the name "Info Insight," as the "Kodak Product" or the "Kodak IDR Product." Section 1.2 of the Master Agreement defines the "Kodak Product" as:

> the product, product family, and components of products, more particularly described as the Kodak IDR Product, that Kodak intends to distribute to [end users] and will include or incorporate the Licensed Software but only as described in Appendix A Exhibit 1 . . . (but not any Licensed Software described in [Appendix A Exhibit 2]) supplied by [ITyX Solutions] and as developed pursuant to this Agreement.

---

[1] Because KAI assumed the rights and obligations of EKC under the Master Agreement, the Court refers to EKC as KAI when describing the terms of the Master Agreement.

The technical and functional features of the "Licensed Software" are described in more detail in Appendix A to the Master Agreement.

Under Section 3.1 of the Master Agreement, KAI agreed to "solely distribute the Kodak Product" and to "not develop a product functionally equivalent to the Kodak Product" while the Master Agreement was in effect. The Master Agreement also contained exceptions to KAI's exclusivity obligations. In relevant part, under Section 3.2(iii) (the "Exit Provision"), KAI, "in its sole good faith business judgment," was permitted to "decide to abandon the IDR business represented by the Kodak Product." If the Exit Provision was triggered, KAI agreed not to sell a "new Kodak-IDR product" that was not supplied by ITyX Solutions for a period of two years after leaving the IDR business.

In addition, Section 2.0 of the Master Agreement provided that it had an initial term of five years, which commenced on January 18, 2012, and would "automatically renew on its anniversary date for successive two-year periods . . . thereafter unless otherwise terminated as provided [in the Master Agreement]." Pursuant to Section 4.1 of the Master Agreement, either party was entitled to terminate the Master Agreement for cause "after a material breach by the other Party" by giving written notice to the defaulting Party that "specif[ied] the default in reasonable detail," unless "the defaulting Party cure[d] the default within 30 days after receipt of the [default notice] or, if such default [could not] be cured within such time, the defaulting Party [did] not promptly start diligently and continuously in good faith to cure the default."

Section 29.0 of the Master Agreement provides that ITyX Solutions "shall act as an independent contractor and nothing herein shall be construed to make [ITyX Solutions] or any of its employees, officers, directors or representatives, the agent employee or servant of Kodak."

4

ITyX Solutions introduced evidence at trial demonstrating that, by entering into the Master Agreement, the parties did not intend or agree to form a partnership or joint venture.

Further, under Section 8.1 of the Master Agreement, the parties anticipated that ITyX Solutions would "provide additional services as stated in one or more Statements of Work," such as training or "other services in connection with further software development." Between March 20, 2012 and December 17, 2014, the parties entered into fourteen Statements of Work. On August 20, 2015, ITyX Solutions and KAI entered into the PS Transfer Pricing Agreement ("PS Agreement"), with an effective date of June 1, 2015. ITyX Solutions and KAI agreed to an amendment to the PS Agreement ("PS Amendment," collectively with the PS Agreement, the "PS Agreements"), which was signed by KAI on September 11, 2015 and by ITyX Solutions on October 9, 2015. The PS Agreements further defined the relationship between the parties, establishing that KAI would focus solely on marketing and sales, and ITyX Solutions would provide the technology to deliver and support the product.

In June 2014, KAI's parent company, Kodak Alaris Holdings ("KAH") entered into an Investment Framework Agreement ("IFA") with ITyX OHG, ITyX Technology, and Mr. Arayan, the ITyX Solutions CEO, to acquire 25.1% of ITyX Technology. Neither ITyX Solutions nor KAI is a party to the IFA. The IFA provided that, in exchange for acquiring 25.1% of ITyX Technology, KAH would make a series of direct investments with ITyX Technology totaling €12.6 million over the course of sixteen months. In the event that KAH defaulted on its payment obligations under the IFA for more than thirty days, ITyX OHG and ITyX Technology could exercise a "call option" and purchase all of KAH's shares of ITyX Technology in exchange for waiving all of KAH's outstanding obligations under the IFA for an additional €1.

In June 2015, by which time the relationship between KAI and ITyX Solutions was already deteriorating, KAH failed to timely make one of the monthly payments required under the IFA. On November 24, 2015, ITyX OHG gave written notice to KAH that it was exercising the call option due to the missed monthly payment, and KAH's rejection of ITyX Technology's request for an investment of an additional €2 million into ITyX Technology.[2] On December 18, 2015, KAH sent a letter to ITyX OHG and ITyX Technology, which terminated the IFA for cause and noticed KAH's withdrawal as a shareholder of ITyX Technology. KAH asserted that by sending the November 2015 exercise notice, ITyX OHG "ha[d] severely and intentionally violated its fiduciary duties owed to [KAH] under the [IFA] and as a co-shareholder of [ITyX Technology];" that the call option, which triggered the purchase of KAH's shares of ITyX Technology worth at least €12.6 million for just €1, was immoral and void; and that the November 2015 exercise notice had permanently destroyed the relationship of trust between the parties.

On that same day, December 18, 2015, KAI notified ITyX Solutions by letter (the "December 18 KAI Notice") that the fiduciary duty breaches associated with the exercise of the call option "also constitute[d] a material breach" of the Master Agreement and the PS Agreements, which could not be cured and thereby voided the contracts. Notably, the December 18 KAI Notice did not contend that ITyX Solutions committed a material breach of the Master Agreement or the related follow-on agreements by breaching the implied covenant of good faith and fair dealing inherent in those agreements under New York law. In any event, at trial, KAI

---

[2] Section 4.2 of the IFA states that "[i]n support of acquisitions or similar strategic investments, [KAH] undertakes to invest in [ITyX Technology] up to an additional [€2 million] during the 2015 calendar year or later, within a period of 90 days upon request by [ITyX Technology]." IFA at 13. On May 28, 2015, ITyX Technology requested a €2 million investment that KAH did not complete.

failed to demonstrate that ITyX Solutions acted in bad faith or otherwise breached the implied covenant during the course of the contractual relationship.

The December 18 KAI Notice also conveyed that even if there was no breach of the Master Agreement, KAI was exiting the IDR business as provided for in the Master Agreement's Exit Provision. At trial, however, ITyX Solutions introduced evidence demonstrating that KAI subsequently reentered the IDR business represented by the Kodak IDR Product by offering its AIM platform for sale beginning in at least September 2016.

The Court's March 1, 2018 order concluded: "(i) that KAI did not properly terminate the Master Agreement or the PS Agreements on December 18, 2015; (ii) that KAI invoked the Exit Provision contained in Section 3.2(iii) of the Master Agreement on December 18, 2015 but later materially breached the Master Agreement by reentering the IDR business represented by the Kodak IDR Product within two years of abandoning the business; [and] (iii) that the Master Agreement and PS Agreements are no longer binding on the parties." ITyX Sols., AG v, 2019 WL 1005497, at *1.

## II.      JURY VERDICT

The jury awarded damages of $7,466,045 to ITyX. [ECF No. 323]. The parties agree that this sum likely reflects the sum of the $872,529 that ITyX sought as damages under the Master Agreement and $6,593,516 for damages resulting from missed payments under the PS Agreements. [ECF No. 367 at 10; ECF No. 382 at 23]. In response to the special interrogatory asking, "Did KAI breach the Master Agreement and/or PS Agreement by terminating them on December 18, 2015?" the jury answered "No." [ECF No. 323 at 2]. In response to the special interrogatory asking the jury, "Did KAI reenter the IDR business represented by the Kodak IDR Product within two years of abandoning that business on December 18, 2015?" the jury

7

answered "Yes." [Id.]. The design of the jury form was such that the jury was not required to answer the question, "Was reentering the IDR business represented by Kodak IDR Product a breach of the Master Agreement?" [Id.]. In response to the special interrogatory asking the jury, "Did KAI breach the PS Agreements by not making quarterly payments due during the minimum term of those agreements from January 1, 2016 through at least June, 1 2017?" the jury answered "Yes." [Id.]. The jury then found that KAI's breach of its contractual obligations was not excused, and it found that KAI had not proven its claims for breach of contract, breach of fiduciary duty, or tortious interference with business relationships. [Id. at 2–9].

### III. MOTION FOR JUDGMENT AS A MATTER OF LAW

KAI's Rule 50 argument for judgment as a matter of law is based on the contention that the evidence was insufficient to support the jury's verdict. [ECF No. 367 at 10–11]. "A party seeking to overturn a jury verdict faces an uphill battle." Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)). In evaluating a motion for judgment as a matter of law, the Court must consider "the evidence presented to the jury, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the jury verdict." Osorio v. One World Techs. Inc., 659 F.3d 81, 84 (1st Cir. 2011) (quoting Granfield v. CSX Transp., Inc., 597 F.3d 474, 482 (1st Cir. 2010)).

KAI argues that judgment as a matter of law is required for three reasons: (1) ITyX lacked standing; (2) ITyX materially breached the agreements and therefore its contractual

8

claims fail; and (3) ITyX did not prove its breach of contract claims. [ECF No. 367 at 11–19]. These arguments are unavailing.

KAI first asserts that ITyX Solutions lacks standing to sue under the agreements because ITyX Solutions falsely represented that it was "the copyright owner of the Licensed Software" that ultimately comprised the Kodak Product. [ECF No. 367 at 11–15]. KAI argues that it proved ITyX's non-ownership of the rights to the Licensed Software by showing that, in June 2014, ITyX Technology represented that it was the "sole and unencumbered" holder of the software and that ITyX Solutions did not subsequently obtain the rights to the software. [Id.]. The jury's findings and award of damages was a rejection of that argument, and its conclusions were supported by ample evidence. ITyX Solution CEO Süleyman Arayan testified that ITyX Solutions had the right to license the software to KAI pursuant to intercompany licensing agreements, including several agreements that were entered into evidence, see [ECF Nos. 368-18 through 368-23], and KAI's counsel did not elicit testimony proving that ITyX Solutions did not have the right to license the software. Just as this Court held at the summary judgment stage, the Court again concludes that KAI's right to sue under the agreements rested on a "disputed issue of material fact as to whether—either through the [intercompany] agreements . . . or the owner's consent"— ITyX Solutions had the authority to license the relevant software. ITyX Sols., AG v. Kodak Alaris Inc., No. 16-CV-10250-ADB, 2018 WL 2392004, at *5 (D. Mass. May 25, 2018). That dispute has been resolved by the jury in a reasonable manner that was supported by the evidence.

KAI next argues that judgment as a matter of law is required because ITyX Solutions committed a material breach of the parties' agreements by violating the duty of good faith and fair dealing, which would preclude ITyX Solutions from recovering as a matter of law. [ECF

9

No. 367 at 15]. More specifically, KAI asserts that because the jury concluded that KAI did not breach the Master Agreement or the PS Agreement through its December 18, 2015 communications to ITyX, the jury necessarily accepted that ITyX violated the implied covenant of good faith and fair dealing. [Id. at 27]. The Court disagrees. The jury found that KAI's breach of its contractual obligations under the Master Agreement and PS Agreements were not excused, and it awarded damages to ITyX for those breaches. See [ECF No. 323 at 2]. The jury appears to have concluded, just as the Court found in its March 1, 2019 order, that "KAI failed to demonstrate that ITyX Solutions acted in bad faith or otherwise breached the implied covenant during the course of the contractual relationship." ITyX Sols., AG, 2019 WL 1005497, at *3. In other words, like the Court, the jury reasonably concluded that ITyX Solutions did not breach the covenant of good faith and fair dealing.

KAI's final argument for judgment as a matter of law is that there was an insufficient evidentiary basis for the jury's finding that ITyX Solutions proved its breach of contract claims and for the damages awarded. [ECF No. 367 at 16–19]. The elements of a breach of contract claim under New York law are: (1) formation of a contract; (2) performance by one party; (3) failure to perform by another; and (4) resulting damage. N.Y. State Workers' Comp. Bd. v. SGRisk, LLC, 983 N.Y.S.2d 642, 648 (N.Y. App. Div. 2014).

The jury's conclusion that KAI breached the agreements and caused damages to ITyX was supported by evidence, including the Master Agreement, the PS Agreement, and the PS Amendment, testimony on ITyX Solutions' efforts to perform under those agreements, KAI's failure to pay professional services costs associated with the PS Agreements, the resulting harm to ITyX Solutions, and KAI's reentry into the IDR business through its AIM platform in 2016. See [TX1; TX2; TX3]. The evidence was sufficient for the jury to find KAI damages equal to

the payments due to ITyX Solutions under the PS Agreement through June 1, 2017. The $6,593,516 that the jury appears to have awarded for breach of the PS Agreement was supported by ITyX's evidence on the costs associated with KAI's breach and considerably less than the more than $10 million that ITyX sought. See Nov. 6 Tr. 94:5–95:24; Nov. 26 Tr. 123:13-19. The $872,529 that the jury apparently awarded for KAI's breach of the Master Agreement is forty (40) percent of the roughly $2.2 million in sales that the jury could reasonably have believed the Kodak Product would have achieved. [ECF No. 367 at 16; ECF No. 382 at 23]. Forty (40) percent represents the maximum royalty payment that KAI would have received from royalties on net revenue from the sale of the Kodak Product, and $2.2 million reflects sales that the AI Foundry achieved by impermissibly reentering the IDR business, which is a fair estimation of the likely net revenue that the Kodak Product would have achieved had the parties' relationship continued. See Nov. 7 Tr. 20:4-14.

KAI argues that the jury's award does not reflect ITyX's actual damages and was impermissibly speculative because ITyX did not continue to perform under the PS Agreement after December 18, 2015. [ECF No. 367 at 18]. KAI contends that it is therefore entitled to judgment as a matter of law because damages should not have been based upon the full amount of payments due under the PS Agreement. [Id. at 18–19]. Further, KAI asserts that it is impossible to know what amount of sales the Kodak Product would have achieved if the parties' relationship had not faltered. [Id. at 24 (citing Haughey v. Belmont Quadrangle Drilling Corp., 29 N.E.2d 649, 652 (N.Y. 1940)]. New York law does not, however, require mathematical precision to satisfy the resulting damages element of a breach of contract claim or to uphold a damages award. See Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 110–11 (2d Cir. 2007). Rather, New York requires only "a stable foundation for a reasonable

11

estimate of the damage incurred as a result of the beach." Id. at 110 (quotation marks and citation omitted). The jury reached a unanimous consensus that was based on evidence of ITyX's actual damages. See, e.g., Nov. 6 Tr. 95:15–100:4.

IV.  **MOTION FOR A NEW TRIAL OR REMITTITUR**

The Court's power to grant a Rule 59 motion for a new trial "is much broader than its power to grant a [motion for judgment as a matter of law]." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009). The Court may grant a motion for a new trial "if the verdict is against the demonstrable weight of the credible evidence," or if it "results in a blatant miscarriage of justice." Foisy v. Royal Maccabees Life Ins. Co., 356 F.3d 141, 146 (1st Cir. 2004) (quoting Sanchez v. P.R. Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)). "The district court may 'independently weigh the evidence' in deciding whether to grant a new trial." Cham v. Station Operators, Inc., 685 F.3d 87, 97 (1st Cir. 2012) (quoting Jennings, 587 F.3d at 435). "[A] district court wields 'broad legal authority' when considering a motion for a new trial . . . ." Jennings, 587 F.3d at 436 (quoting de Pérez v. Hosp. del Maestro, 910 F.2d 1004, 1006 (1st Cir. 1990)). At the same time, a "district judge cannot displace a jury's verdict merely because [she] disagrees with it or because 'a contrary verdict may have been equally…supportable.'" Id. (quoting Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996)). "[W]hen an argument that the evidence was insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law." Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).

KAI claims that a new trial is required for substantially the same reasons that it seeks judgment as a matter of law and further asserts that a new trial is necessary because some

confusion could have resulted from the verdict form and because "misconduct by counsel for the ITyX Group tainted the proceedings." [ECF No. 367 at 22–25]. For substantially the same reasons discussed above, the Court does not believe that the verdict is against the weight of the evidence or reflects a miscarriage of justice.[3] Eleven citizens took three weeks out of their lives to listen to evidence in an exceedingly complex contract dispute, deliberated, and reached a unanimous verdict in favor of ITyX Solutions. The jury was attentive to the evidence, and their apparent conclusion that KAI breached both the Master Agreement and the PS Agreements and their damages award were supportable based on the evidence presented.

The Court finds KAI's argument that a new trial is appropriate because the verdict form resulted in juror confusion unpersuasive. "When . . . a special verdict is utterly ambiguous in a salient respect, and the trial court has failed satisfactorily to explain or cure the ambiguity, . . . justice requires that the issue be retried." Dopp v. HTP Corp., 947 F.2d 506, 516 (1st Cir. 1991). Here, the Court perceives no such ambiguity on a salient point nor any "fundamental flaw [that has] infect[ed] the judgment." Id. Although in hindsight the verdict form could have been worded differently, the form reflected extensive thought and discussion by the parties and the Court, and the final structure of the questions at issue was agreed to by KAI. See Nov. 26 Tr. 4:21–11:22, 16:19–21:25. Further, the jury's verdict leaves completely unambiguous the jurors' unanimous conclusion that KAI breached the PS Agreements, reentered the IDR business within two years of abandonment the IDR business, and that $7,466,045 is the "amount of money that

---

[3] In addition to its arguments that there was not sufficient evidentiary support for the jury's verdict, KAI's motion accuses Mr. Arayan of giving untruthful testimony at trial. [ECF No. 367 at 8]. This argument goes primarily to witness credibility and not to the sufficiency of the evidence supporting the jury's verdict. Mr. Arayan was subject to cross-examination on the supposed untruthful testimony, and the jury's verdict therefore necessarily resolved the credibility issue that KAI now wants to argue to the Court.

will fairly compensate ITyX Solutions for its damages for KAI's breach of its contractual obligations." [ECF No. 323 at 3]. The completed verdict form is also consistent with the Court's March 1 findings of facts and conclusions of law. See [ECF No. 323]; see generally ITyX Sols., AG, 2019 WL 1005497.

Lastly, the Court does not believe there was significant misconduct by ITyX's counsel during trial, but even if the Court concluded that ITyX's counsel engaged in misconduct, it would not grant a new trial because the conduct KAI complains of did not affect the verdict. First, KAI complains that ITyX's counsel elicited testimony that KAI's total revenue was approximately $1 billion, that ITyX witnesses repeatedly referenced their company's smaller size, and that ITyX's counsel stated in closing that "this is a large company taking advantage of a smaller company, using its access to confidential information that they got as a result of this relationship [a]nd its financial purse strings . . . to make another company struggle financially." Nov. 26 Tr. 86:2-7. As an initial matter, the relative financial strengths of contracting companies may be useful in understanding the dynamics of a given business relationship and thereby understanding pieces of evidence in some circumstances. Even assuming, *arguendo*, that all references to KAI's revenue and the parties relative size was completely irrelevant, there is no reason to believe that the jury ignored the Court's instruction that "all persons, including corporations and other businesses, stand equal before the law and are to be dealt with as equals" and that "[i]n computing damages, you should not consider the ability of a party to pay such damages." Id. at 129:17-19. "[J]urors are presumed to follow the trial court's instructions." Rio Mar Assocs. v. UHS of P.R., Inc., 522 F.3d 159, 163 (1st Cir. 2008) (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987)). KAI's assertions that "[t]he jury instructions did not cure the statements because it was blatantly improper conduct" presumes that the jurors ignored the

Court's instructions and instead based their verdict on improper considerations. [ECF No. 367 at 24]. That presumption is both unsupported by evidence and inconsistent with the law. See Rio Mar Assocs., 522 F.3d at 163; see also Weeks v. Angelone, 528 U.S. 225, 234 (2000).

## V. CONCLUSION

Accordingly, KAI's motion for judgment as a matter of law pursuant, a new trial, remittitur, or to amend the Court's March 1, 2019 equitable claim order [ECF No. 366] is DENIED.

**SO ORDERED.**

June 19, 2019 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE